**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                                                    **CASE NO.  4:06cr83-SPM**


**KOLAWOLE A. OLAOGUN,**

      **Defendant.**

_____/

**SENTENCING MEMORANDUM**

The defendant, Kolawole Olaogun, is a hardworking 54 year old man who typically works more than 50 hours a week.  He and his wife have six children at home who are dependant upon his income.  His offense, that of registering to vote and voting, was committed without the intent to cause any harm and without any bad motive. Given these circumstances, a period of probation without any incarceration would be "sufficient, but not greater than necessary," to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).  18 U.S.C. § 3553(a).

As reported by the Presentence Report, Mr. Olaogun has been employed by Taco Bell since 2003. (PSR ¶ 41).  His work at Taco Bell has been, by any standard, exceptional and is part of a long history of steady employment. *(¶¶ 41-44, PSR).*

The hours Mr. Olaogun puts in at Taco Bell are a good indication of just how hard he works. At the undersigned's request, Mr. Olaogun has secured the "Pay Check Verification Report" that shows the hours he has worked over a period of time.  The records cover a little more than the last six months, from September 20, 2006 through April 10, 2007. Here is what a summary of those records show:

| Week Of | Hours Worked | Week Of | Hours Worked |
|---|---|---|---|
| **2006** | | **2007** | |
| September 24 | 51.58 | January 7 | 53.3 |
| October 1 | 56.53 | January 14 | 47.34 |
| October 8 | 56.53 | January 21 | 54.54 |
| October 15 | 65 | January 28 | 48.58 |
| October 22 | 52.2 | February 4 | 52.55 |
| October 29 | 56.2 | February 11 | 50.44 |
| November 5 | 48.36 | February 18 | 61.68 |
| November 12 | 59.83 | February 25 | 48.06 |
| November 19 | 55.66 | March 4 | 52.09 |
| November 26 | 51.93 | March 11 | 54.29 |
| December 3 | 47.92 | March 18 | 3.93 |
| December 10 | 55.27 | March 25 | 50.51 |
| December 17 | 21.3 | April 1 | 56.95 |
| December 24 | 50.06 | | |
| December 31 | 50.97 | | |

(Exhibit 1).[1]

Even in what are routinely long weeks, there are some days that are especially long. The records for April 6th and 7th of this year show that Mr. Olaogun went to work at about 9:45 a.m. on the 6th and worked until almost 4:00 a.m. on the 7th - over 18 hours. He then came back the next day at Noon and worked until almost 7:00 p.m. About six weeks earlier, he came to work at 5:57 a.m. on February 21st and did not leave until almost 3:30 a.m. the following day - over 21 hours. Mr. Olaogun puts in these hours even though he is *paid each week for only 40 hours.*

---

[1]Exhibit 1, as well as the other Exhibits referenced in this memorandum, are not attached to the memorandum. The undersigned will forward copies of those exhibits to the Court and the Government in advance of the sentencing hearing.

Mr. Olaogun's efforts have earned him high praise from his supervisors.  Kathy McCollum,

who testified at the trial, and is a district supervisor, has written:

> Kolawole is enthusiastic about his job and is a passionate problem solver.  I can count on him to volunteer for projects and to teach others about the business.  He takes great pride and ownership in the Tennessee Street location.  The business has outgrown the building under his tutelage.  I am fortunate to have Kolawole to trust the business to in my absence; during this time he is overseeing seven restaurants with almost 10 million dollars in sales.  He steps up to the plate for many challenges.  He is the first to be called by his peers to help solve problems that arise in the nature of the business.  His team at the store has dramatically evolved under his leadership.  He consistently presents challenges and always recognizes great results.

(Exhibit 2).  Stephen Montgomery, who manages the Taco Bell restaurants in the Tallahassee area,

writes:

> Kolawole worked with me for a year as I left in 2005.  During that time, I came to know him as passionate about his profession and his family.  He is one of the most industrious and conscientious men that I have had the pleasure of working with in my entire career.  His integrity is above reproach and whichever business site he was working always produced good results.  He is well respected by his peers and is a player that everyone wants on their team.  I now consider Kolawole as a friend not just an acquaintance; he can be counted on to volunteer his time and energy for almost anything.

(Exhibit 3).  Finally, William King, the Vice President of Operations for the company that owns Taco

Bell restaurants in the Tallahassee, Gainesville, Ocala, and St. Augustine areas writes:

> Yomi has been a very valuable asset to our company and an outstanding member of our management team. He has performed his duties in a professional and responsible manner since his employment began. Yomi continues to strive for excellence in everything that he does and is never afraid to accept new challenges and responsibilities. Recently he won three of our company's fifteen yearly management awards in the following categories: Team Player of the Year, Administrative Excellence, and the Tallahassee Coaches Award.
>
> Yomi has brought a great spirt and team orientation to his restaurant and our company. He is well liked and respected by everyone. I hope that this letter conveys how valuable Yomi is to our company and me.

3

(Exhibit 4).

In asking for probation, Mr. Olaogun is aware that the Court will have some concerns. He testified at trial about filing his application with the immigration authorities in May of 2005, when the evidence seems to say that he submitted the application earlier, in February of 2005. The jury, too, obviously rejected his testimony that he believed he was a citizen when he registered to vote and voted. It is worth noting, though, that much time had passed between the primary events of the case and the January, 2007 trial. Nearly two years, for example, had passed since Mr. Olaogun apparently first submitted the application to the immigration authorities in February of 2005. Mr. Olaogun initially registered to vote in November of 2001, more than five years prior to the trial. When he voted for the first time on September 10, 2003, it was more than four years before the trial. Similarly, it was four years prior to the trial that he submitted the change of address form that led to the second charge of falsely holding himself out as a citizen.

Mr. Olaogun recognizes, too, that his record is not unblemished. As noted in Paragraph 25 of the Presentence Report, there was the battery conviction. There was also an arrest for some bad checks (PSR ¶ 27). Then, too, as hard as Mr. Olaogun has worked, he found himself in a difficult financial situation and declared bankruptcy in 2005.[2]

---

[2]The presentence report raises some question about Mr. Olaogun's attendance at Florida A & M University. Ms. Vernese Wade, the Interim Registrar, in a letter to the undersigned's office, wrote that Mr. Olaogun "enrolled as a fulltime student at Florida A&M University from 01/84 through 4/88. We show that [Mr. Olaogun] registered for classes Spring Semester, 1993 and Spring Semester 1994. However both the registrations were cancelled due to non-payment of fees." Mr. Olaogun reports that he started taking classes in both of those semesters, but was unable to stay in school because he lacked the money to pay for tuition. Dr. Dorothy Henderson, the Dean of General Studies at the University, has told an investigator from the undersigned's office that Mr. Olaogun was on campus in 2001 trying to clear various holds on his registration and taking a CLAST exam.

Still, Mr. Olaogun is devoted to his family and has a good reputation. In addition to those that have written from Taco Bell, Millie Dalzell, who is the nursing supervisor at Westminster Oaks where Ms. Olaogun works, writes that "Mr. Olaogun is a hard working family man" and that he is "an asset to the community" for whom she does "not hesitate to vouch for his honesty and integrity." (Exhibit 5). Latifu Jinadu, an engineer for the State of Florida and who knew Mr. Olaogun as far back as when the two were in Nigeria, writes that Mr. Olaogun "has been a good friend and caring father" and "is a very respectful individual, always playing positive roles and helping friends and families around him and well respected by friend and family." (Exhibit 6).

Despite Mr. Olaogun's hard work, his large family, even after the bankruptcy, remains in a financially precarious situation. His two children from his first marriage are grown and financially independent. His oldest son, Lawrence, is 26 years old and, although he has now left the school, had been a law student at the Florida A&M University Law School in Orlando. His daughter, Charlena, who is 23, has finished serving her enlistment in the United States Navy. Mr. Olaogun and his current wife, Laverne, have six children at home, all of whom are students in Tallahassee. The oldest, at age 16, is a high school student. They have a 14 year old at the C. K. Steele Charter School, with the three other children, ranging from age 8 to 13, attending Pineview Elementary School. In the home, as well, is Ms. Olaogun's daughter from her first marriage who attends Kaiser College.

The family lives on the $2,350 that Mr. Olaogun and his wife bring home each month. (PSR ¶45). Ms. Olaogun is a nurse technician at the Tallahassee residential facility, Westminster Oaks. Mr. Olaogun's income represents just slightly more than 50% of the family's total monthly income. Even with that, though, their monthly cash flow, as reported in the Presentence Report, is more than $400

5

less than their monthly expenses. *Id.* The monthly expenses include about $200 that Mr. Olaogun sends to his mother in Nigeria. *Id.*

It nearly goes without saying that Mr. Olaogun is badly needed at home to help run the household and care for the children. If he were unable to work for a period of time, it seems clear that the Olaogun's financial circumstances would collapse.

The mandate of 18 U.S.C. § 3553(a) is, of course, for the court to "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in paragraph 2 of that same statute. In <u>United States v. Hunt</u>, 459 F.3d 1180, 1182 (11th Cir. 2006), the court summarized the factors that a sentencing court must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established [ . . .by the Sentencing Commission];
> (5) any pertinent [Sentencing Commission] policy statement . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

Mr. Olaogun's hard work, the positive view of him as evidenced by those that have written letters, and his family's need to have him at home and working are the pertinent " history and characteristics of the defendant" that the statute recognizes are so central to the sentencing decision. The "nature and circumstances of the offense" are also an important consideration.

Mr. Olaogun did not register and vote because he received some sort of financial benefit or because he was so moved by one candidate or another that he was willing to commit voter fraud. He testified to that effect, and the chronology of events supports that interpretation. He registered to vote on November 20, 2001, but didn't actually vote for more than nine months, voting in a primary election on September 10, 2002. He, then, voted in the general election two months later and voted a third time two years later in November 2, 2004. It would make little sense for someone to pay him to register to vote in November when the next election was more than nine months off. Similarly, in November of 2001, it would have been difficult to even know precisely who would be on the ballot more than nine months later.

The only explanation that makes any sense is that Mr. Olaogun, as he testified, registered because he was urged to do so. As he explained, he initially registered on the Florida A & M campus in a voter registration drive. Three days after he voted in the September 2002 primary election, he filled out a change of address form, which included a representation that he was a citizen and which led to the charge in Count Two. It makes sense that he did so only because, having moved, he was urged to file a change of address form by one of the poll workers.

Thus, while no one would dispute the importance of the integrity of the electoral process, Mr. Olaogun committed the offense without the intent to corrupt that process. Certainly, elections should be limited to citizens. Nonetheless, there is some irony that, in a country where we often complain of low voter participation, Mr. Olaogun finds himself facing criminal charges because of such participation.

It may be, too, that the most disastrous consequence of Mr. Olaogun's decision to register and vote may be his immigration status. Immigration authorities have advised that there will be a

hearing to determine Mr. Olaogun's immigration status.  By some accounts, the issue of illegal voting

has taken on political significance that may increase his chances of being deported.  An April 12,

2007, article in The  New York Times, for example,  reports that a Pakistani national, Usman Ali, a

68 year-old jewelry store owner, who was a resident of *Tallahassee* and  a 10-year legal resident of

the United States, was deported "for improperly filing out a voter-registration card while renewing

is driver's license."[3]  Mr. Olaogun, who is in the process of trying to retain an immigration lawyer has

found that the hiring of a lawyer will involve an additional penalty.  He was recently quoted a fee of

$10,000.  It is a fee he is not able to afford, and he continues to try and secure representation.

Given the nature of the offense and Mr. Olaogun's history and characteristics, a period of

probation would satisfy the remaining relevant considerations of 18 U.S.C. § 3553(a).  In as much

as a general deterrent is a consideration, it is worth noting that despite the ongoing political debate

about voter fraud, it, objectively, does not appear to be a significant problem.[4]  Then, too, given the

circumstances of the offense and Mr. Olaogun's background, a period of probation would "reflect

the seriousness of the offense,. . . promote respect for the law, and . . . provide just punishment for

the offense."  18 U.S.C. § 3553(a)(2)(A). With Mr. Olagogun's devotion to his work and his family,

the likelihood of recidivism is remote, so there shouldn't be any need "to protect the public from

further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Finally, the sentence of probation that

Mr. Olaogun is hopeful the Court will impose is within the advisory Guidelines range and,

---

[3] Eric Lipton and Ian Urbina, *5-Year Effort, Scan Evidence of Voter Fraud,* The New York Times, April 12, 2007, available  at: http://www.nytimes.com/2007/04/12/washington/12fraud.html?ex=1177300800&en=96df8df3daa 0fc59&ei=5070&emc=eta1.

[4] Lipton and Urbina, *Id.*

8

accordingly, there wouldn't seem to be any need to be concerned about "unwarranted sentence disparities." 18 U.S.C. § 3553(a)(6).

Mr. Olaogun's large family very much needs him at home for his guidance and support. They need him at home, too, if the family's precarious financial circumstances are to remain intact. As evidenced by his long hours and the positive comments of his supervisors, he is badly needed at work. A sentence of probation would allow for these important needs and would comply with the goals of sentencing. Mr. Olaogun, therefore, requests this Court to consider placing him on a period of probation without any period of incarceration.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Winifred Nesmith, Assistant United States Attorney, 111 N. Adams Street, 4th Floor, Tallahassee, FL 32301, by electronic delivery this 17th day of April, 2007.

Respectfully Submitted,

By:    s/Randolph P. Murrell
   RANDOLPH P. MURRELL
   Federal Public Defender
   Fla. Bar No. 220256
   227 N. Bronough Street, Suite 4200
   Tallahassee, FL 32301
   (850) 942-8818